UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Abel Amigon Sanchez, *Plaintiff*, v. Samuel Olson, Field Office Director of Enforcement and Removal Operations, Chicago Field Office, Immigration and Customs Enforcement, *et al.*, *Defendants.* | No. 25 CV 12453 Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Abel Amigon Sanchez, a noncitizen detained by Immigration and Customs Enforcement, petitions the court for a writ of habeas corpus under 28 U.S.C. § 2241. Sanchez also moves for a Temporary Restraining Order requesting similar forms of relief. For the reasons below, the Amended Petition is granted in part, and the motion for a TRO is denied as moot.

**I. Background**

Abel Amigon Sanchez, a Mexican national, entered the United States without inspection in 2006. [Dkt. 10, ¶ 23.] Decades later, on October 9, 2025, ICE officers arrested him without a warrant while he was working in Burbank, Illinois. [*Id.*, ¶ 27.] The officers, still with no warrant, took Sanchez to the ICE Processing Center in Broadview, Illinois. [*Id.*] While not yet filed, Respondents informed Sanchez's attorney that his notice to appear before the Executive Office for Immigration Review charges Sanchez with being an alien present in the U.S. who has not been admitted

1

or paroled and is removable for having entered the United States without inspection under 8 U.S.C. § 1182(a)(6)(A)(i). [*Id.*, ¶ 3.]

The Department of Homeland Security, pursuant to a new policy, has declined to release Sanchez from immigration custody, and Respondents are seeking to commence removal proceedings against him under 8 U.S.C. § 1229a. [*Id.*, ¶ 4.] Sanchez's immigration proceedings have not yet commenced but his notice to appear directs him to present himself to the Chicago Immigration Court on October 31, 2025 at 9 A.M. [*Id.*, ¶ 33.] He is currently housed at the Clay County Jail in Brazil, Indiana.[1] [*Id.*, ¶ 1.]

Until his detainment, Sanchez lived in an Oak Forest, Illinois home that he has owned since 2020. He has no criminal history, has worked for the same employer for 15 years, and is a member of the Roofers, Waterproofers, and Allied Workers Local 11 Union. [*Id.*, ¶¶ 26, 30.] Sanchez's six-year-old twin daughters, both of whom are U.S. citizens, lived with him. [*Id.*, ¶¶ 24–25.] The twins' "mother has chosen not to have a meaningful role in the children's lives." [*Id.*, ¶ 25.] So Sanchez has primary custody and is the main parental figure. [*Id.*] Their mother has not sought to care for them in Sanchez's absence. [*Id.*, ¶ 28.] And the children are currently being cared for by his ex-wife's aunt. [*Id.*]

Sanchez filed his initial habeas petition while detained in Broadview, Illinois, so the Northern District of Illinois is a proper venue. While, as addressed below,

---

[1] The proper respondent to a noncitizen's habeas petition is the warden of the detention center in which he is detained. See *Kholyavskiy v. Achim*, 443 F.3d 946, 949-53 (7th Cir. 2006). The clerk is directed to add Brandon Crowley, County Jail Commander as a respondent.

Respondents assert that federal district courts in general lack jurisdiction to consider habeas petitions involving a noncitizen's "ongoing removal proceedings" under 8 U.S.C. § 1252(a)(2), § 1252(b)(9), and § 1252(g), they do not contend that Sanchez's transfer to Brazil, Indiana affected this court's jurisdiction.

The court held a status hearing with the parties on October 23, 2025. The purpose of the hearing was to solicit Respondents' view on whether Sanchez's position is materially different than that of a petitioner in a case this court recently granted habeas relief in, *Ochoa Ochoa v. Noem et al.*, 2025 WL 2938779 (N.D. Ill. Oct. 16, 2025). While Respondents expressed their disagreement with this court's reasoning and conclusions in *Ochoa Ochoa*, they represented that the cases were materially indistinguishable and the arguments against granting the petition in *Ochoa Ochoa* apply with equal force here. In ruling on the present petition for habeas relief, then, the court considers all arguments raised in opposition to Ochoa Ochoa's petition for habeas relief. See *Ochoa Ochoa v. Crowley*, Case No. 25-cv-10865, Dkt. 14, (N.D. Ill.)

## II. Discussion

A district court may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws ... of the United States." 28 U.S.C. § 2241. The individual in custody bears the burden of proving that his detention is unlawful. See, *e.g.*, *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

Sanchez claims violations of the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment. He asks the court to issue a writ of habeas corpus requiring the government to immediately release him from custody or, alternatively, to provide him with a bond hearing pursuant to 8 U.S.C. § 1226(a)

within 14 days. He also seeks declaratory relief. Respondents make three arguments in response: (1) this court lacks jurisdiction over the habeas claims; (2) Sanchez's detainment is lawful under § 1225(b)(2), (3) of the INA; and (3) Sanchez has no cognizable right to due process.[2]

This court agrees with Respondents that Sanchez's case is materially indistinguishable from that of the petitioner in *Ochoa Ochoa*. So, based on the same reasoning of that case, Sanchez's petition is granted in part.

A.  **Jurisdiction**

Respondents challenge this court's jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(ii), § 1252(b)(9), and § 1252(g). But, as district courts across the country have almost uniformly concluded, see *Barrajas v. Noem*, 2025 WL 2717650, at *3 (S.D. Iowa Sept. 23, 2025) (observing that federal officials have raised these same jurisdictional arguments in similar cases over the past few months and district courts have "repeatedly rejected" them), none of these statutes strip the court of its jurisdiction.

Section 1252(g) does not apply because it governs situations when a noncitizen challenges the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders against any" noncitizen. 8 U.S.C. § 1252(g). But like the petitioner in *Ochoa Ochoa*, Sanchez "does not challenge the 'commencement' of his removal proceedings (that is, being issued [a notice to appear]); the 'adjudication'

---

[2] To the extent Respondents argue that Sanchez has not satisfied administrative exhaustion, the argument is rejected for the same reasons provided in *Ochoa Ochoa*. See 25 WL 2938779, at *2 n.4.

4

of his case (as [the Executive Office for Immigration Review] has not yet granted any form of relief, issued a removal order, or otherwise terminated his proceedings); or the 'execution' of a removal order" (no removal order exists). 2025 WL 2938779, at *3. Section 1252(g) does not broadly cover "all claims arising from deportation proceedings," *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (internal citations omitted), and "nothing in § 1252(g) precludes review of the decision to confine," *Carrera-Valdez v. Perryman*, 211 F.3d 1046, 1047 (7th Cir. 2000).

Section 1252(b)(9) also does not bar jurisdiction over challenges to whether and when a bond hearing is required in removal proceedings. See *Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018); see also *Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (holding that § 1252(b)(9) allows judicial review of claims against federal officials for detaining noncitizens without bond). That is the case here as Sanchez challenges whether Respondents have the authority to hold him without a bond hearing, not whether they had the authority to detain him in the first place.

Finally, § 1252(a)(2)(B)(ii) does not apply because Sanchez does not challenge a discretionary decision. 8 U.S.C § 1252(a)(2)(B). "[N]o court shall have jurisdiction to review ... any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security.") Respondents maintain that his detention is governed by § 1225(b), which requires mandatory, not discretionary detention.

5

## B.  Basis for Detention

Having established jurisdiction, the court turns to the merits. Sanchez asserts that Respondents erroneously categorized him as a detainee under 8 U.S.C. § 1225(b)(2), which requires mandatory detention during removal proceedings for all "applicant[s] for admission" who are not defined in § 1225(b)(1) and are "seeking admission." In Sanchez's view, his detainment falls under the ambit of § 1226(a), which sets out the "'default rule' for the discretionary detention of noncitizens already present in the United States." *Ochoa Ochoa*, 2025 WL 2938779, at *4 (citing *Jennings*, 583 U.S. at 288).

In agreement with almost every district court (including this one) to have considered the issue, the court finds that the "statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice" all lead to the same conclusion: § 1226(a), not § 1225(b)(2), applies to situations like Sanchez's, where ICE detains a noncitizen already residing in the United States. See *Rodriguez v. Bostock*, 2025 WL 2782499, at *1 (W.D. Wash. Sept. 30, 2025) (collecting cases); *Buenrostro-Mendez v. Bondi*, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025) ("As almost every district court to consider this issue has concluded, the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application for the past three decades support finding that § 1226 applies to these circumstances.") (citation omitted); *Belsai D.S. v. Bondi*, 2025 WL 2802947, at *5 (D. Minn. Oct. 1, 2025) ("Overwhelmingly, courts have rejected the interpretation offered by Respondents that § 1225(b)(2) requires the detention of all noncitizens living in the country who are 'inadmissible' because they entered the United States without

6

inspection."); *Ochoa Ochoa*, 2025 WL 2938779, at *5 ("Respondents' argument that § 1225(b)(2)(A) applies to all noncitizens present in the United States without admission, fails. It cites no binding authority and does not grapple with *Jennings*.").

Sanchez has built a life for himself in the United States over the past 20 years. He owns a home in Illinois, and his twin daughters are U.S. citizens. He's worked for the same employer for 15 years and is involved in the community as a member of a local labor union. To put things plainly, Sanchez is far beyond "seeking admission." See, *e.g.*, *Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) (explaining that "seeking admission" "implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection"); *Lopez Benitez v. Francis*, 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025) (explaining how Respondents' interpretation—that all individuals not yet legally admitted to the United States are "seeking admission"—would render the phrase "seeking admission" superfluous by equating it with "applicant for admission"). Because he is not seeking admission, § 1225(b) cannot apply.

Instead, Sanchez's detention is governed by the default rule, § 1226(a). Because § 1226(a) requires the government to provide detainees with a bond hearing and Respondents have not done so, Sanchez's detainment is contrary to the laws of the United States.

### C. Due Process

Respondents' detainment of Sanchez without a bond hearing is also unconstitutional under the Due Process Clause. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or

7

'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Again, this court is not the first to consider this issue. Indeed, this is not even the first time this court has considered the issue. See *Ochoa Ochoa*, 2025 WL 2938779. For the reasons stated in *Ochoa Ochoa* and dozens of other district court cases, the court finds that Sanchez's detention violates the Due Process Clause. See, *e.g.*, *Lopez-Campos*, 2025 WL 2496379, at \*9; *Lepe v. Andrews*, 2025 WL 2716910, at \*9 (E.D. Cal. Sept. 23, 2025); *Salazar v. Dedos*, 2025 WL 2676729, at \*5 (D.N.M. Sept. 17, 2025).

### D.    Scope of Relief

Sanchez requests immediate release from custody or, alternatively, an individualized bond hearing. The latter is appropriate here, as the procedural due process violation arises from his detention under § 1226(a) without a bond hearing, rather than the detention itself.[3] At Sanchez's bond hearing before the immigration judge, the government bears the burden to prove by clear and convincing evidence

---

[3] Section 1226(a) authorizes a noncitizen's detainment only pursuant to a warrant issued by the Attorney General. Some courts have found that a warrantless arrest under § 1226(a) justifies a detainee's immediate release from custody. See, *e.g.*, *Chogllo Chafla v. Scott*, 2025 WL 2688541, at \*11 (D. Me. Sept. 22, 2025). In his petition, Sanchez takes the position that his detention without a bond hearing is contrary to § 1226(a) and that Respondents have no authority to detain him under § 1225(b). He does not, however, allege that Respondent's detention itself was contrary to any law. So the court does not address whether Sanchez's warrantless arrest itself is a basis for relief.

that the detainee poses a danger or flight risk. See, *e.g.*, *Ochoa Ochoa*, 2025 WL 2938779, at *8.

### III. Conclusion

For these reasons, the court grants Sanchez's First Amended Petition for Writ of Habeas Corpus. His detention without an individualized custody determination violates the INA and the Due Process Clause of the Fifth Amendment. Within seven days of this order, Respondents must either: (1) provide Sanchez with a bond hearing before an immigration judge, at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Sanchez's continued detention; or (2) release Sanchez from custody, under reasonable conditions of supervision.[4]

Enter: 25-cv-12543
Date: October 27, 2025

_____
Lindsay C. Jenkins

---

[4] As to other forms of relief requested, Sanchez may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act. 28 U.S.C. § 2412(d); 5 U.S.C. § 504; see *Kholyavskiy v. Schlecht*, 479 F. Supp. 2d 897, 901 (E.D. Wis. 2007) ("[I]t cannot be reasonably disputed that the EAJA applies to a habeas action challenging immigration-related detention.").